UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORICEL LIBORIO RAMOS,<br>        Plaintiff,<br>v.<br>JEFFERSON B. SESSIONS, et al.,<br>        Defendants. | Case No. 18-cv-00413-JST<br><br>**ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS**<br>Re: ECF Nos. 1, 6 |

Before the Court is Petitioner Floricel Liborio Ramos's motion for a temporary restraining order and petition for a writ of habeas corpus. ECF Nos. 1, 6. Liborio Ramos is currently in detention while she awaits the conclusion of removal proceedings and the adjudication of her claim for withholding of removal. Liborio Ramos asks the Court to order her release before March 14, 2018, because the immigration judge ("IJ") who conducted her immigration detention hearing did not require the government to meet its burden of showing by clear and convincing evidence that she was either a danger to the community or a flight risk before refusing to release her on bond. ECF No. 7 at 6.

For the reasons stated below, the Court concludes that the bond proceedings denied Liborio Ramos her right to due process, and orders the government either to conduct a bond hearing that comports with due process, or to release her.

**I. BACKGROUND**

Liborio Ramos is a 38-year-old woman who came to the United States when she was 18 years old. She has three minor children, ages 11, 13, and 17, all of whom are United States citizens. Her youngest child, a daughter, has special needs. ECF No. 7 at 6-7. In 2012, her life partner and the father of her three children was deported, and Liborio Ramos became a single

mother. She worked two full-time jobs while caring for her children, including making sure her daughter received the necessary special instruction at her school and taking her to speech therapy. Id. at 7.

The stress of her circumstances made it difficult for Liborio Ramos to sleep, and she began drinking beer at night to calm her nerves and help her sleep. Eventually she became addicted to alcohol. She also became depressed, blaming herself for her daughter's difficulties and worrying about her finances. In November 2015, she pled guilty to misdemeanor driving under the influence and hit-and-run. She was sentenced to probation, community service, and a 9-month, video-based DUI education program.[1] Approximately a year later, in November 2016, Liborio Ramos again drove under the influence and pleaded guilty to misdemeanor DUI and driving with a suspended license. She was sentenced to community service and DUI education. Id. at 8; ECF No. 15-1 at 37.[2] The DUI education program she was required to attend was significantly different from, and more effective than, her first set of video classes. The second program included individual counseling and group therapy. Liborio Ramos further committed to rehabilitation by regularly attending church and involving herself in the church community, quitting her restaurant job and finding a new job where she would not be around alcohol, and remaining sober. ECF No. 7 at 8-9.

On March 26, 2017, immigration authorities detained Liborio Ramos as she was leaving an International House of Pancakes after eating breakfast with her children. Id. at 9. When Liborio Ramos was detained, an asylum officer found that she had a reasonable fear of returning to Mexico where members of the Zetas gang had threatened to kill her and did kill members of her family on the basis of their indigenous identity. Id. at 10. When she was detained, Liborio Ramos was placed in withholding-only proceedings, due to a removal order she received at the border in

---

[1] The government states that Liborio Ramos was sentenced to 15 days in custody, but its own exhibits show that she was sentenced to community service. ECF No. 15-1 at 13; see also "2022620000-Sheriff-Work Programs, San Joaquin County," located at www.sjgov.org/WorkArea/DownloadAsset.aspx?id=9406 (In the San Joaquin County Sheriff's Alternative Work Program, "[p]articipants serve two to five days per week in community service in lieu of serving time in custody.").

[2] See note 1, supra.

2

2003. See 8 U.S.C. § 1231(a)(5).[3] At her merits hearing before an IJ currently scheduled for March 14, 2018, she will seek relief in the form of withholding of removal on the basis of this reasonable fear. Id.

The Government scheduled bond hearings for Liborio Ramos on October 24, 2017 and November 8, 2017, but only held full proceedings on November 29, 2017, more than eight months after she was detained. ECF No. 7 at 11. The IJ denied Liborio Ramos's release on bond, concluding that she was such a flight risk and danger to the community that no amount of bond could secure her release. ECF No. 8-1 at 20.

Liborio Ramos then petitioned this Court for habeas corpus relief and moved for a temporary restraining order, ECF Nos. 1, 6, which request the Court now considers.

## II. JURISDICTION

"[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [] bond hearing determinations for constitutional claims and legal error." Singh v. Holder, 638 F.3d 1196, 1200-01 (9th Cir. 2011). "In addition, although the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas. . . ." Id. at 1202 (citations omitted). In

---

[3]
> If an alien who was previously removed from the United States pursuant to a removal order re-enters the United States and is subsequently apprehended, 8 U.S.C. § 1231(a)(5) allows the government to reinstate the alien's prior removal order, and the alien cannot challenge his reinstated removal order either directly or collaterally. 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed.").
>
> However, if the alien expresses a fear of returning to the country of removal, and if an asylum officer finds that the alien has a "reasonable fear" of persecution, then the alien is placed in "withholding-only" proceedings before an IJ through which the alien may apply for withholding of removal. See 8 C.F.R. § 208.31. These proceedings are known as "withholding-only" proceedings because the IJ's jurisdiction is limited to consideration of whether an alien is entitled to withholding of removal only. See id. § 1202.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings ... shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal.").

Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *4 (N.D. Cal. Oct. 2, 2017).

3

particular, a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional. See Sales v. Johnson, No. 16-CV-01745-EDL, ECF No. 17 at 8 (N.D. Cal. April 27, 2017) (concluding that immigrant's claims were reviewable by district court where challenged as constitutionally flawed); Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017) (same); Castaneda v. Aitken, No. 15-CV-01635-MEJ, 2015 WL 3882755, at *7-8 (N.D. Cal. June 23, 2015) (same); Espinoza v. Aitken, No. 5:13-CV-00512 EJD, 2013 WL 1087492, at *3 (N.D. Cal. Mar. 13, 2013) (same); see also, c.f., Saravia v. Sessions, No. 17-CV-03615-VC, 2017 WL 5569838, at *2 (N.D. Cal. Nov. 20, 2017) (ordering bond hearings for unaccompanied minors previously determined not to be flight risks or dangerous but re-detained because of changed circumstances under procedural due process).

The Government contends that the Court lacks jurisdiction to hear Liborio Ramos' petition because she failed to exhaust her administrative remedies before the Bureau of Immigration Appeals ("BIA"). First, the Government cites 8 U.S.C. § 1252(d)(1), which applies to "final order[s] of removal." The present case does not involve a final order of removal. Furthermore, the Ninth Circuit has held that 8 U.S.C. § 1252(a)(2)(B), which governs discretionary denials of relief, is not a jurisdictional bar. Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017). Rather, administrative exhaustion is a prudential, rather than jurisdictional, concern. Id. at 988–89. Where administrative remedies would be futile, a petitioner is not required to administratively exhaust. Id.

The Court concludes that Liborio Ramos has adequately demonstrated futility. She has been detained since March 2017. She finally received a bond hearing in December 2017, at which bond was denied. She contends that she was denied due process of law at that hearing. She appealed that denial to the BIA two weeks after her bond denial, but no hearing date, or even briefing schedule, has been set for her appeal. That process is expected to take four months. ECF Nos. 7 at 13, 8-1 at 9. Liborio Ramos is entitled to a bond hearing every six months; she will have been in custody for well more than a year by the time her appeal is heard; and even a successful appeal will not allow her to be out of custody in time to assist her counsel at her March 14 merits

4

hearing. Another court in this district held in a similar case that "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that "waiver of the exhaustion requirement is appropriate." Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) (citations omitted); see c.f., Resendiz v. Holder, No. C 12-04850 WHA, 2012 WL 5451162, at *4 (N.D. Cal. Nov. 7, 2012) (finding no exception to prudential exhaustion requirement because immigrant did not timely file appeal with BIA nor habeas petition, for three months); Carmona v. Aitken, No. 14-CV-05321-JSC, 2015 WL 1737839, at *8 (N.D. Cal. Apr. 10, 2015) (same, as to nine months). The Court reaches the same conclusion here, and finds that Liborio Ramos's claim falls under the prudential exception of futility and that administrative exhaustion is not required.

## III. DISCUSSION

### A. Petitioner's Entitlement to a Bond Hearing

The first question is whether Liborio Ramos is entitled to a bond hearing at all. The Government argues that she is not, given that she is in withholding proceedings under 8 U.S.C. § 1231(a)(5). ECF No. 15 at 8. As another court in this district has noted, however, "because only two provisions of § 1231(a) authorize detention—§ 1231(a)(2) (which authorizes detention during the 90-day removal period) and § 1231(a)(6) (which authorizes detention beyond the 90-day removal period) . . . an alien who is detained while in "withholding-only" proceedings must be detained pursuant to either § 1231(a)(2) or § 1231(a)(6)." Villalta, 2017 WL 4355182, at *5. And the Ninth Circuit has made clear that immigrants detained under § 1231(a)(6) are entitled to bond hearings every six months. Diouf v. Napolitano, 634 F.3d 1081, 1082 (9th Cir. 2011). The Court likewise concludes that Liborio Ramos was entitled to a bond hearing because she was in withholding proceedings under § 1231(a)(5) and detained pursuant to § 1231(a)(6).[4]

### B. Whether Petitioner's Bond Violated Due Process

In order to continue detention, due process requires the Government to show by clear and

---

[4] The Court also notes that the IJ concluded that Liborio Ramos was entitled to a bond hearing under the specific precedent cited above, and Liborio Ramos did in fact receive a bond hearing. ECF No. 9-1 at 19-20.

5

convincing evidence that an immigrant is a flight risk or a danger to the community at the time of the bond hearing. Singh, 638 F.3d at 1208; see also Diouf 6314 F.3d 1081 (extending Singh to bond hearings for immigrants detained under § 1231(a)). To determine whether an immigrant is a flight risk or poses a danger to the community, an IJ must consider factors including: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. Matter of Guerra, 20 I&N Dec. 37, 40 (BIA 2006).

The clear and convincing evidence standard "is a high burden and must be demonstrated in fact." Obregon, 2017 WL 1407889, at *7; see also id. at 6 (looking to criminal bond hearings for guidance in assessing whether the government met its burden, and at the criminal court which made the underlying determination to release the immigrant). "[A]lthough an alien's criminal record is surely relevant to a bond assessment, . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." Singh, 638 F.3d at 1206. The IJ must consider not only the seriousness of any prior criminal conduct, but whether the immigrant's circumstances have changed such that criminal conduct is now less likely. Id. at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased."). To determine whether the IJ's determination complied with these standards, the Court looks closely at the information before the IJ and whether the IJ adequately considered that evidence. See Obregon, 2017 WL 1407889, at *7 ("[T]he IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness.").

Here, the IJ declined to release Liborio Ramos on any amount of bond because: (1) Liborio Ramos's two misdemeanor DUI convictions and failed efforts at rehabilitation after her first conviction endangered the community, and (2) Liborio Ramos was a flight risk because she told the IJ she would pursue all available legal relief if she were ordered deported. The IJ's written decision included details from police reports about Liborio Ramos's DUIs in 2015 and 2016, which indicate that she was driving unsafely. ECF No. 8-1 at 18-19. Also before the IJ was information about Liborio Ramos's 19-year history in the United States, three minor daughters, and substantial community support – as evidenced by 80 community letters and 30 attendees at her hearing, including the Bishop of San Francisco. Id. at 7. Liborio Ramos also submitted to the IJ a large amount of information evidencing her rehabilitation and continued prospects for sobriety, particularly after her second conviction. Id. This evidence showed that she would continue to receive treatment and support towards her rehabilitation, and that she has a U.S. citizen sponsor who would support her financially and emotionally upon release. Id. at 39.

While the IJ noted Liborio Ramos's testimony that she had participated in rehabilitation and intended to avoid alcohol in the future, the IJ appeared to rely largely on Liborio Ramos's convictions instead of her changed, post-conviction circumstances. Id. at 18-19. Moreover, the IJ considered Liborio Ramos to be a flight risk because she stated she would take all available legal steps to remain in the United States if she were ordered deported. Id. at 19. While the IJ took this as an indication that Liborio Ramos would evade arrest, her counsel understood that she was explaining her intent to appeal. ECF Nos. 7 at 22, 8-1 at 9. The IJ did note that Liborio Ramos has "long resided in the US and has 3 citizen children." ECF No. 8-1 at 20.

One court in this district granted habeas relief after an IJ denied bond for an immigrant with a significantly more severe criminal history and significantly fewer ties to the United States. Sales, No. 16-CV-01745-EDL, ECF No. 17. The immigrant had been convicted of second degree murder, and had family in the United States but no property or business here, and no evidence of community support like Liborio Ramos. Id. at 12. Nonetheless, the court reasoned that there was no evidence that he was a flight risk and the immigrant's criminal history was not extensive, so granted relief. Id. In a case analogous to the case at hand, another court in this district expressed

7

substantial doubt that there had been clear and convincing evidence to detain an immigrant. Obregon, 2017 WL 1407889, at *4. The petitioner had been convicted of two misdemeanor DUIs, one felony DUI, and four convictions for driving without a license. Id. The court concluded that the IJ did not rely exclusively on the immigrant's past convictions, but also on their recency, her past failure to rehabilitate, her positive change in relationship status, and her past failure to comply with bond by violating U.S law while on release. Id. at *7. But the court noted that the IJ failed to consider evidence that the immigrant had been somewhat successful in rehabilitation, intended to return to treatment, and was in meaningfully different rehabilitation treatment after her latest DUI. Id. The petitioner wanted to, but had not been able to, testify about her rehabilitation plan if she were released. Id. at *8. Finally, the court noted that "it was worth considering . . . that the criminal courts clearly believed that petitioner was entitled to bail *before* she was detained fourteen months ago." Id. (emphasis in original). The court found it "extremely doubtful that any Magistrate Judge on this court would have remanded her to custody based on this record." The court was "skeptical" that the Government could show by clear and convincing evidence that the immigrant was a flight risk or dangerous. Id. Given that the immigrant was entitled to a six month hearing in 25 days, the court simply ordered that the bond hearing occur within that time frame, rather than grant habeas relief. Id.

In the present case, the Court concludes that the Government did not show by clear and convincing evidence that Liborio Ramos was a danger to the community or a flight risk such that no amount of bond, or alternative supervision, could secure her release. The IJ did not appear to consider alternatives to detention such as residential treatment or alcohol monitoring, or whether any amount of bond could mitigate flight risk or dangerousness. Matter of Sanjeev Kumar Narayan, 2009 WL 2981790 (BIA, Aug. 31, 2009). Also, while Liborio Ramos was convicted of two DUIs, relatively recently in 2015 and 2016, see Castaneda, 2015 WL 3882755, at *7-8 (finding clear and convincing evidence of dangerousness from two serious DUIs), she has also demonstrated significant changed circumstances in the form of meaningful rehabilitation as evidenced by letters from community members, her own testimony about her dedication to sobriety, and her concrete steps like changing jobs and remaining in treatment, see Obregon, 2017

WL 1407889, at *7-8 (finding efforts towards meaningful rehabilitation to significantly weigh against clear and convincing evidence of present dangerousness). As in Obregon, the state criminal court concluded that petitioner was neither a flight risk nor a danger to the community. And unlike in Obregon, Liborio Ramos testified as to her rehabilitation plan on release including through letters from her rehabilitation counselors. ECF No. 8-1 at 61, 64. The Court also notes that the rehabilitation Liborio Ramos attended since her 2016 DUI differed meaningfully from her rehabilitation after her 2015 DUI in that it offered personal therapy, and Liborio Ramos made other significant changes like increased involvement in church, reduced access to alcohol, and actual sobriety, Id. at 20-21, which the IJ did not appear to consider, ECF No. 8-1 at 20.

Moreover, the IJ appears to have based her conclusion that petitioner was a flight risk on petitioner's statement that would pursue her legal remedies if she were ordered deported. The pursuit of legal remedies is simply not consistent with a risk of flight. Even assuming that it were, however, that evidence is outweighed by significant evidence that she is not a flight risk. Id. at 9. Liborio Ramos has lived in the country for nearly two decades, has deep family ties and significant employment history, and no record of missing court dates or evading court orders. Matter of Guerra, 20 I&N Dec. at 40. In sum, "[i]t violates due process to keep someone in immigration detention for [nearly a] year on the basis of dangerousness where the overriding reason is that a non-violent crime was committed as a result of that person's addiction and the individual has a viable plan for rehabilitation and compliance with pertinent conditions of release." Obregon, 2017 WL 1407889, at *8.

### C. What Relief is Due

Having concluded that Liborio Ramos did not receive due process at her prior bond hearing, the question is what relief is now due. As have other courts in this district and circuit, the Court concludes that the appropriate remedy is to order that she be released unless the Government provides a new bond hearing which complies with due process within a certain amount of time. Sales, No. 16-CV-01745-EDL, ECF No. 17 at 14; Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (granting habeas in form of bond hearing); Espinoza, 2013 WL 1087492, at *3 (same); Franco-Gonzales v. Holder, 828 F. Supp. 2d 1133, 1149 (C.D. Cal. 2011)

(same). But see Borjas-Calix v. Sessions, No. CV-16-685-TUC-DCB, 2017 WL 1491629, at *4 (D. Ariz. Apr. 26, 2017) (enjoining ICE from re-detaining immigrant where IJ ordered him released on bond, but BIA held he was not entitled to bond). Liborio Ramos is ordered released unless the Government holds a bond hearing which comports with due process within fifteen days of the issuance of this order.

## CONCLUSION

For the aforementioned reasons, Liborio Ramos's petition for habeas corpus is granted in part. The Government is enjoined from detaining Liborio Ramos unless they hold a bond hearing which comports with due process, where the Government shows by clear and convincing evidence that she is a flight risk or danger to the community, within fifteen days from the issuance of this order. Because the Court grants alternative relief under Liborio Ramos's petition for habeas corpus, Liborio Ramos's motion for a temporary restraining order is terminated as moot. Chen, 917 F. Supp. 2d at 1019 (terminating as moot motion for preliminary relief when court granted petition).

**IT IS SO ORDERED.**

Dated: February 15, 2018

_____
JON S. TIGAR
United States District Judge