UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FLORICEL LIBORIO RAMOS,

      Petitioner,

    v.

JEFFERSON B. SESSIONS, et al.,

      Respondents.

Case No. 18-cv-00413-JST

**ORDER GRANTING MOTION TO ENFORCE PRIOR ORDER**

Re: ECF Nos. 20, 22

Before the Court are Petitioner Floricel Liborio Ramos's motions for a temporary restraining order ("TRO") and to enforce this Court's prior judgment. ECF Nos. 20, 22. The court will grant the motion to enforce and order Respondents to release Liborio Ramos immediately under appropriate conditions of supervision.

## I.    BACKGROUND

Floricel Liborio Ramos came to the United States when she was 18 years old, and she has now been here for twenty years. She has three minor children, ages 11, 13, and 17, all of whom are United States citizens. ECF No. 7 at 6-7. Her youngest child has special needs. Id. In 2012, Liborio Ramos became a single mother, and worked two full-time jobs while caring for her children, including making sure her daughter received necessary special education and therapy. Id. at 7.

Liborio Ramos began drinking beer at night to deal with her stress, and she eventually became addicted to alcohol. In November 2015, she pleaded guilty to misdemeanor driving under the influence and hit-and-run. She was sentenced to probation, community service, and a nine month, video-based DUI education program. Approximately a year later, in November 2016, Liborio Ramos again drove under the influence and pleaded guilty to misdemeanor DUI and

driving with a suspended license.  She was sentenced to community service and DUI education.

Id. at 8; ECF No. 15-1 at 37.  The DUI education program she was required to attend was

significantly more rigorous – and effective – than her first set of video classes.  Unlike the first

program, it included individual counseling and group therapy.  Liborio Ramos further committed

to rehabilitation by regularly attending church and involving herself in the church community,

quitting her restaurant job and finding a new job where she would not be around alcohol, and

remaining sober.  ECF No. 7 at 8-9.

In March 2017, immigration authorities detained Liborio Ramos, and found that she had a

reasonable fear of returning to Mexico where members of the Zetas gang had threatened to kill her

and did kill members of her family on the basis of their indigenous identity.  Id. at 9-10.  She was

placed in withholding-only proceedings, due to a removal order she received at the border in 2003.

See 8 U.S.C. § 1231(a)(5).  At her merits hearing before an IJ, currently scheduled for March 14,

2018, she will seek relief in the form of withholding of removal on the basis of this reasonable

fear.  Id.

An IJ held a bond hearing for Liborio Ramos on November 29, 2017, more than eight

months after she was detained.  ECF No. 7 at 11.  The IJ denied Liborio Ramos's release on bond,

concluding that she was a flight risk and a danger to the community, and that no amount of bond

could secure her release.  ECF No. 8-1 at 20.  Liborio Ramos then petitioned this Court for habeas

corpus relief and moved for a temporary restraining order.  ECF Nos. 1, 6.  The Court granted in

part Liborio Ramos's habeas petition, reasoning that the IJ deprived Liborio Ramos of due process

when she failed to hold the government to its burden to show by clear and convincing evidence

that Liborio Ramos was a flight risk or a danger to society.  ECF No. 19 ("February 15 Order").

The Court ordered the Government to release Liborio Ramos unless it held an additional bond

hearing at which the Government demonstrated dangerousness or flight risk by clear and

convincing evidence.  Id.

On February 22, 2018, the IJ conducted a second bond hearing.  The IJ incorporated the

evidence she had already received by reference; considered two pieces of additional documentary

"evidence", her first bond memorandum and the February 15 Order; and took approximately one

additional hour of testimony by Liborio Ramos.  ECF No. 20-2 at 4.  On March 2, 2018, the IJ issued a second bond memorandum denying bond.  Id.  In her second memorandum, the IJ recounted the details of Liborio Ramos's two DUIs as well as her rehabilitation efforts.  The IJ noted that Liborio Ramos first completed a nine month DUI program, then committed a second DUI, and then began a more effective DUI program which "involved hearing people share their stories in group discussion setting."  Id. at 5.  However, Liborio Ramos completed only two hours and thirty minutes of her second DUI program, which the IJ found to be "meager in comparison to [Liborio Ramos's] conduct – particularly in light of the fact that she had scarcely completed an entire 9-month-long DUI offender program before reoffending."  Id. at 7.  She acknowledged that Liborio Ramos was picked up by ICE only a month into her second DUI program, but nonetheless held Liborio Ramos's lack of continued participation against her.  Id.  The IJ concluded that Liborio Ramos's "testimony that she has changed and will never drink again is not worthy of belief" given the short term of her second DUI counseling and the "evidence of dangerous, recidivist drunk driving."  Id. at 8.  The IJ noted that Liborio Ramos presented only one witness, her DUI counselor Elizabeth Diaz, who "was unavailable for testimony when phoned by the Court," and "declined to present testimony from any other witnesses or individuals."  Id. at 7.  After "thoroughly consider[ing] documentary evidence and testimony" the IJ concluded that the Government "met its burden of demonstrating by clear and convincing evidence that [Liborio Ramos] poses a danger to the community."  Id.  Finally, the IJ "considered whether there is any condition of release that would ensure the public safety," but concluded there was not because Liborio Ramos "has little regard for the law," given that she was on probation at the time of her second DUI.  Id. at 9.

Unlike in her first order, the IJ did not analyze whether Liborio Ramos was a flight risk, id., and the Government no longer justifies Liborio Ramos's detention on this ground.

## II.     JURISIDCTION

The Court earlier concluded that it had jurisdiction over Liborio Ramos's habeas petition, ECF No. 19, and now reaches the same conclusion.  This Court "has habeas jurisdiction under 28 U.S.C. § 2241 to review [] bond hearing determinations for constitutional claims and legal error."

3

Singh v. Holder, 638 F.3d 1196, 1200-01 (9th Cir. 2011). "[A]lthough the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable. . . ." Id. at 1202 (citations omitted). This Court therefore has jurisdiction to review Liborio Ramos's claim that her bond hearing, to which she was entitled under Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) as an immigrant detained for over six months under 8 U.S.C. § 1231(a)(6), was legally erroneous and unconstitutional. See Sales v. Johnson, No. 16-CV-01745-EDL, ECF No. 17 at 8 (N.D. Cal. April 27, 2017); Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017); Castaneda v. Aitken, No. 15-CV-01635-MEJ, 2015 WL 3882755, at *7-8 (N.D. Cal. June 23, 2015); Espinoza v. Aitken, No. 5:13-CV-00512 EJD, 2013 WL 1087492, at *3 (N.D. Cal. Mar. 13, 2013).

The Government calls the Court's jurisdiction into question. It notes that shortly after the Court issued its prior order, but before the IJ issued her second bond memorandum, the Supreme Court ruled that immigrants detained under different statutory provisions, 8 U.S.C. §§ 1225(b)(1), 1225(b)(2), and 1226(c), are not entitled to bond hearings at six month intervals. Jennings v. Rodriguez, 138 S. Ct. 830, 836 (2018). In her second bond memorandum, the IJ looked to Jennings in concluding that she "no longer has jurisdiction to conduct custody redetermination hearings for individuals . . . who are . . . detained pursuant to INA § 241(a) [8 U.S.C. § 1231(a)]." ECF No. 20-2 at 6. The IJ reasoned that Rodriguez v. Robbins, 804 F.3d 1060, 1139 (9th Cir. 2015), which provided bond hearings for individuals detained under sections 1225(b)(1), 1225(b)(2), 1226(c), and Diouf, 634 F.3d at 1139, which provides bond hearings for individuals like Liborio Ramos detained under section 1231(a)(6), both applied the canon of constitutional avoidance. Id. Because the Supreme Court reversed Rodriguez "on the grounds that the Ninth Circuit misapplied the canon of constitutional avoidance," the IJ reasoned that Diouf "too is no longer a reliable source of jurisdiction." Id.[1]

Contrary to the Government's assertion and the IJ's conclusion, Jennings neither prevents

---

[1] The IJ noted that this Court "has not yet been afforded an opportunity to address the jurisdictional issue in light of Jennings." ECF No. 20-2 at 6.

an IJ from conducting a bond hearing for immigrants detained under section 1231(a)(6) nor deprives this Court of jurisdiction to review the constitutionality of that bond determination.  First, Jennings affirmed that 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to this Court hearing habeas cases challenging the denial of bond.  Section 1252(b)(9) bars judicial review of final orders of removal.  8 U.S.C. § 1252(b)(9).  However, Jennings confirmed that habeas bond petitions are "not challenging the decision to detain [immigrants] in the first place or to seek removal," and accordingly the Court has jurisdiction to review this case.  Jennings, 138 S. Ct. at 841.

Second, Jennings reversed the Ninth Circuit's holding in Rodriguez that immigrants detained under sections 1225(b)(1), 1225(b)(2), and 1226(c) were entitled to a bond hearing every six months, but left untouched the Ninth Circuit's requirement of such hearings for immigrants detained under section 1231(a)(6).  138 S. Ct. at 836.  An immigrant's detention is authorized under two different groups of statutes.  First, immigrants who have not yet been ordered removed, and are either seeking asylum, deemed inadmissible, or challenging their removal order are detained under either section 1225(b)(1) (authorizing detention for immigrants deemed inadmissible, and seeking asylum until their asylum proceedings terminate), 1225(b)(2) (authorizing detention for immigrants deemed inadmissible, and seeking admission until their removal proceedings terminate), or 1226(c) (authorizing detention for immigrants in removal proceedings who are charged with crimes or terrorist activities).   Many immigrants in this first category of detention are directly challenging their removal order.  Second, immigrants who have been ordered removed, either because they received a final removal order or were previously deported, and are pursuing collateral review of that removal order, pursuing withholding of removal, or cannot be repatriated to their country, are detained under section 1231(a)(6).  Liborio Ramos has a final order of removal because of a prior deportation, but is seeking withholding relief, so she is detained under section 1231(a)(6).

Jennings held that immigrants detained under the first category (sections 1225(b)(1), 1225(b)(2), and 1226(c)) are not entitled to bond hearings every six months because the Ninth Circuit erroneously applied the canon of constitutional avoidance when it held that they were

5

entitled to such hearings.  Jennings, 138 S. Ct. at 842.  Jennings reached this conclusion by

expressly contrasting the first statutory category – immigrants detained pursuant to sections 1225

and 1226 – with the second – immigrants detained pursuant to section 1231(a)(6) – on three

grounds.  First, the Supreme Court reasoned that the statutory text of sections 1225 and 1226

provides that immigrants "*shall* be detained," while section 1231(a)(6) provides that immigrants

"*may* be detained."  Id. at 843-44 (citing to Zadvydas v. Davis, 533 U.S. 678 (2001), where the

Supreme Court read section 1231(a)(6) to require hearings every six months because the statute

provided that immigrants "may be detained").  The Supreme Court reasoned that "may" in section

1231(a)(6) suggested discretion and ambiguity which left space for constitutional avoidance, while

any interpretation of "shall" to allow for release simply contradicted the statutory text.  Id.

Second, the Supreme Court looked to provisions in sections 1225 and 1226, which allowed for

release through parole, while section 1231(a)(6) had no such provisions for release, which left

negative space for an implied limitation.  Id. at 844.  Third, the Supreme Court reasoned that the

text of sections 1225 and 1226 envision some end to detention, when asylum or removal

proceedings conclude, and section 1231(a)(6) does not, because immigrants detained under section

1231(a)(6) have already exhausted their direct review.  Id. at 843.  This third factor arguably

undercuts Liborio Ramos's contention that Jennings does not apply to her eligibility for a bond

hearing, because like those in asylum proceedings under section 1225(b), her detention will end

when her withholding proceedings end.  However, the first two factors show at a minimum that

Jennings left for another day the question of bond hearing eligibility under section 1231(a)(6), and

at best that the Ninth Circuit correctly invokes the doctrine of constitutional avoidance in such

situation.

In any event, given the Supreme Court's explicit carve-out, Diouf remains good law and is

binding on this Court.  That case held that immigrants detained under section 1231(a)(6) are

entitled to bond hearings.  Diouf, 634 F.3d 1081.  Moreover, even if this Court thought that Diouf

were "clearly irreconcilable" with Jennings – which it does not – only a three-judge panel may

overrule prior Ninth Circuit precedent on that ground.  United States v. Robertson, 875 F.3d 1281,

1291 (9th Cir. 2017).  To state the obvious, this Court is not a three-judge panel of the Ninth

Circuit.  Thus, the Court will continue to follow Diouf.  Immigrants detained under § 1231(a)(6), such as Liborio Ramos, remain entitled to bond hearings every six months to determine whether the Government showed they are a flight risk or danger by clear and convincing evidence.

The Government argues that this Court lacks jurisdiction for three additional reasons. First, the Government contends that Liborio-Ramos is not entitled to a bond hearing because she is in withholding only proceedings.  ECF No. 25 at 16.  The Court has already rejected this argument in the February 15 Order, and rejects it now for the same reasons.  ECF No. 19 at 5.  Two other courts in this district have concluded persuasively that immigrants detained under section 1231(a)(6) by reason of withholding only proceedings are entitled to the bond hearings under Diouf.  Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *4 (N.D. Cal. Oct. 2, 2017); Castaneda, 2015 WL 3882755, at *3.  As the court in Villalta explained, "[a]n immigrant who was previously removed (has a removal order) and reenters has no direct or collateral review available for removal, but if they express a reasonable fear of persecution, they're placed in withholding only proceedings while the IJ considers whether they are entitled to withholding of removal. . . . [U]nder Diouf II, an alien who is detained in 'withholding-only' proceedings pursuant to the second provision, § 1231(a)(6), is entitled to a bond hearing if the alien has been subject to prolonged detention."  Villalta, 2017 WL 4355182, at *4-5.

Second, the Government contends that the clear and convincing evidence standard does not apply to bond hearings held under section 1231(a)(6).  ECF No. 25 at 17-18.  This court follows other courts in this district that have held that the clear and convincing evidence standard does apply.  See Sales v. Johnson, No. 16-CV-01745-EDL, 2017 WL 6855827, at *5 (N.D. Cal. Sept. 20, 2017); Castanda, 2015 WL 3882755, at *3.  It is easy to understand why this standard governs section 1231(a)(6) bond determinations by examining the progression of Ninth Circuit case law on immigration bond hearings.  First, the Ninth Circuit held in Casas-Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008) that immigrants detained under § 1226(a) are entitled to bond hearings.  Then, the Ninth Circuit held in Diouf that immigrants detained under section 1231(a)(6) are presumptively entitled to Casas hearings when they have been detained for six months.  Diouf, 634 F.3d at 1085.  Finally, the Ninth Circuit explained in Singh that Casas hearings are governed

1  by a clear and convincing evidence standard.  Singh, 638 F.3d at 1200.  Following the thread of

2  these cases, it is clear that the clear and convincing evidence standard of proof applies to section

3  1231(a)(6) Diouf hearings, which derive from Casas hearings.

4        Third, the Government argues that this Court lacks jurisdiction to review discretionary

5  bond determinations under 8 U.S.C. § 1226(e).  ECF No. 25 at 19.  Section 1226(e) provides that

6  the "Attorney General's discretionary judgment regarding the application of *this section [1226]*

7  shall not be subject to review. No court may set aside any action or decision by the Attorney

8  General *under this section* regarding the detention or release of any alien or the grant, revocation,

9  or denial of bond or parole."  8 U.S.C. § 1226(e) (emphasis added).  Liborio Ramos is detained

10 under section 1231(a)(6), not section 1226, so it is not clear that this provision applies to her.  In

11 any case, as this Court concluded in its prior order, Liborio Ramos mounts a constitutional and

12 legal challenge to the IJ's bond determination, arguing that it failed to comply with due process,

13 and does not challenge a discretionary determination.  ECF No. 19 at 3.  The Ninth Circuit has

14 made clear that a district court retains jurisdiction, notwithstanding section 1226(e), to review

15 legal and constitutional challenges to bond determinations, which are not challenges to

16 discretionary determinations.  Singh, 638 F.3d at 1202 ("[A]lthough the Attorney General's

17 discretionary judgment . . . shall not be subject to review, claims that the discretionary process

18 itself was constitutionally flawed are cognizable in federal court on habeas because they fit

19 comfortably within the scope of § 2241.") (citations omitted).  And most recently in Jennings, the

20 Supreme Court concluded that section 1226(e) does not bar constitutional or legal challenges.

21 Jennings, 138 S. Ct. at 841 ("[B]ecause the extent of the Government's detention authority is not a

22 matter of 'discretionary judgment,' . . . respondent's challenge to 'the statutory framework that

23 permits [their] detention without bail,' falls outside of the scope of § 1226(e).").

24        In sum, immigrants detained under section 1231(a)(6), like Liborio Ramos, remain entitled

25 to bond hearings whereby the Government must show their dangerousness or flight risk by clear

26 and convincing evidence every six months, notwithstanding the Supreme Court's recent ruling in

27 Jennings.  It remains clear that the Court has jurisdiction over this case.

28

### III. EXHAUSTION

The Government next argues that Liborio Ramos's motion should be denied because she did not administratively exhaust her claim. ECF No. 25 at 6. As this Court explained in its prior order, exhaustion is a prudential concern. ECF No. 19 at 4. The Ninth Circuit has made clear that administrative exhaustion will not deprive a court of jurisdiction to review an immigration bond determination. Hernandez v. Sessions, 872 F.3d 976, 988-89 (9th Cir. 2017).

In any case, although Liborio Ramos did not appeal the IJ's second bond decision to the BIA, she was not required to do so. Liborio Ramos filed a motion to enforce this Court's prior order, and she need not seek administrative review before filing a motion to enforce that order. Harvest v. Castro, 520 F.3d 1055 (9th Cir. 2008) (concluding that a district court has jurisdiction to enforce its prior conditional order on a petition for habeas corpus). Another court in this district concluded that an immigrant need not appeal to the BIA before filing a motion to enforce. Sales, 2017 WL 6855827, at *7 ("Respondents have cited no authority for the proposition that a litigant must exhaust administrative remedies before filing a motion to enforce a final judgment. Furthermore, Petitioner contends that there is no administrative agency process through which Mr. Sales can seek compliance with a federal court order."); see also Mau v. Chertoff, 562 F. Supp. 2d 1107, 1113–14 (S.D. Cal. 2008) ("As an initial matter, the Court disagrees with Respondents' argument that Petitioner should be required to pursue an appeal with the BIA before returning to this Court and requesting enforcement of its judgment. This request for relief relates directly to this Court's prior order and, as such, there are no administrative remedies to exhaust. It should not fall to the BIA to review Respondents' compliance with this Court's judgment."); Judulang v. Chertoff, 562 F. Supp. 2d 1119, 1125 (S.D. Cal. 2008). Accordingly, the Court concludes that Liborio Ramos need not exhaust by appealing to the BIA before moving to enforce this Court's prior order, and exhaustion is no bar to this Court's review.

### IV. STANDARD OF PROOF FOR BOND

As to what standard of proof the IJ was required to apply in her bond determination, due process requires the Government to show by clear and convincing evidence that an immigrant is a flight risk or a danger to the community at the time of the bond hearing. Singh, 638 F.3d at 1208;

9

see also <u>Diouf</u>, 6314 F.3d at 1081 (extending <u>Singh</u> to bond hearings for immigrants detained under section 1231(a)(6)). To determine whether an immigrant is a flight risk or poses a danger to the community, an IJ must consider factors including: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. <u>Matter of Guerra</u>, 20 I&N Dec. 37, 40 (BIA 2006). "Although an alien's criminal record is surely relevant to a bond assessment, . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." <u>Singh</u>, 638 F.3d at 1206. Moreover, "not every criminal record would support a finding of dangerousness. For example, some orders of removal may rest on convictions for relatively minor, non-violent offenses. . . ." <u>Id.</u> The IJ must also consider whether the immigrant's circumstances have changed such that criminal conduct is now less likely. <u>Id.</u> at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.").

The clear and convincing evidence standard "is a high burden and must be demonstrated in fact." <u>Obregon</u>, 2017 WL 1407889, at *7; <u>see also id.</u> at 6 (looking to the criminal court which made the underlying determination to release the immigrant for guidance in assessing whether the Government met its burden).

## V.     THIS COURT'S STANDARD OF REVIEW

The more difficult and less settled question is what standard governs this Court's review of the IJ's bond determination. In <u>Singh</u>, the Ninth Circuit held that the clear and convincing evidence standard applied to immigration bond determinations, that the IJ committed legal error

by failing to apply that standard, and that this error was prejudicial because the case was close, there was little evidence to support the IJ's conclusion, and the little evidence was equivocal. <u>Singh</u>, 638 F.3d at 1205. <u>Singh</u> did not, however, provide clear guidance on precisely what standard of review a district court should apply in reviewing an IJ's application of the clear and convincing evidence standard of proof.

It seems clear is that a standard of review which asks only whether the IJ announced the correct legal standard is insufficient. <u>C.f.</u>, <u>Nat'l Res. Def. Council, Inc. v. Pritzker</u>, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); <u>Cole v. Holder</u>, 659 F.3d 762, 771-72 (9th Cir. 2011) ("[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence."). Other courts in this district have considered whether an IJ adequately applied the clear and convincing evidence standard to bond determinations even where the IJ announced the correct standard. <u>See</u> <u>Sales</u>, 2017 WL 6855827, at *6 (reasoning that although the IJ stated the clear and convincing evidence standard correctly, "this brief and conclusory treatment of the evidence that Petitioner is a flight risk at the June 23, 2017 hearing does not actually, or correctly, apply the clear and convincing standard"); <u>see also</u> <u>Obregon</u>, 2017 WL 1407889 at *7 (IJ announced correct standard, but the district court went on to assess whether she correctly applied that standard); <u>Castenda</u>, 2015 WL 3882755, at *3 (same). Even after reviewing these decisions, however, it is not clear what standard of review the district court applies to the IJ's determination. The parties have not identified a district court or Ninth Circuit case announcing a particular standard of review, and the Court has not uncovered one.

The Court therefore takes its cue from the standard of review an appellate court applies when reviewing a lower court's application of the clear and convincing evidence standard. <u>See</u> <u>Obregon</u>, 2017 WL 1407889, at *6 (drawing standards for immigration bond from criminal bail cases including <u>United States v. Salerno</u>, 481 U.S. 739, 751 (1987) which applied the clear and convincing evidence standard). In <u>Singh</u>, the Ninth Circuit concluded that the clear and

convincing evidence standard from civil commitment cases should apply to immigration bond determinations, reasoning that a relatively high standard of proof must apply where a party faces a deprivation of liberty in the form of non-punitive detention. Singh, 638 F.3d at 1204 (citing Addington v. Texas, 441 U.S. 418, 427 (1979) and Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). The Ninth Circuit also recognized in an immigration bond case that the same clear and convincing evidence standard applies in criminal bail cases, where the court assesses whether to release a person charged with, but not yet convicted of, a crime because they pose such a significant danger to society. Tijani v. Willis, 430 F.3d 1241, 1246 (9th Cir. 2005) (Tashima, J., concurring) (equating Addington and Salerno clear and convincing evidence standards and reasoning that the standard should govern immigration bond determinations); see also United States v. Sahhar, 917 F.2d 1197, 1205 (9th Cir. 1990) ("We see no meaningful distinction between this [civil commitment] case and Allen and Salerno."); Foucha, 504 U.S. at 81 (drawing from Salerno to analyze civil commitment).

When the Ninth Circuit reviews a district court's application of the clear and convincing evidence standard in criminal bail cases, it applies the following standard of review: "Factual findings underlying a district court's pretrial release or detention order, including whether a defendant is a flight risk or a danger to the public, are reviewed under the clearly erroneous standard, coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld." United States v. Fidler, 419 F.3d 1026, 1029 (9th Cir. 2005)(citations omitted); see also United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990) ("[T]he district court's factual findings in a bail hearing are to be reviewed under a deferential, clearly erroneous standard. But the conclusions based on such factual findings present a mixed question of fact and law and require the exercise of sound judgment as to the values underlying the legal principles. Accordingly, we make an independent examination of the record to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at our conclusion de novo"). But see Sahhar 917 F.2d at 1208 (applying the habeas sufficiency of the evidence standard to review civil commitment where a defendant challenged his civil commitment as a violation of due process "because the government

12

failed to produce evidence to justify his commitment") (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)); <u>but see also c.f.</u>, <u>United States v. Chischilly</u>, 30 F.3d 1144, 1150 (9th Cir. 1994) (describing the standard of review for incompetence findings as "clear error"); <u>United States v. Koenig</u>, 912 F.2d 1190, 1192 (9th Cir. 1990) (describing the standard of review for a district court's review of a magistrate judge's bail determination as "de novo . . . without deference to the magistrate's factual finding").

This independent review of the findings and record allow a reviewing court to ensure that an immigrant receives the constitutional process to which she is due. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1405 (9th Cir. 1985) ("[I]n reviewing a district court's order denying pretrial release [under the clear and convincing evidence standard], we must ensure not only that the factual findings support the conclusion reached, but also that the person's constitutional and statutory rights have been respected."). For example, a reviewing court might ask whether the IJ meaningfully engaged with the record in making her findings, or instead ignored crucial evidence. The Court also notes that any review of an agency determination, including in the immigration context, should incorporate some deference to the agency, particularly on factual or credibility determinations, and on the application of the agency's own laws and regulations. <u>Zadvydas</u>, 533 US at 701 (reasoning that a habeas court can and should in a general sense defer to executive authority). The standard of review the Court has outlined incorporates some deference. Moreover, this case involves a review of whether the agency complied with constitutional due process, rather than with its own regulations or laws.

The Court also finds support for this standard of review from other district courts in this district and circuit. Without announcing any particular standard of review, other courts in this district and circuit appeared to follow a similar standard in reviewing IJ's bond determinations. For example, courts have indicated some deference to an IJ's factual determinations, particularly of credibility. <u>See</u> <u>Singh v. Holder</u>, No. C 09-03012 JSW, 2010 WL 702246, at *4 (N.D. Cal. Feb. 25, 2010) ("[T]he IJ's credibility findings based on cross-examination relating to witness testimony are squarely within the province of the IJ's exercise of discretion."); <u>see also</u> <u>Manzanarez v. Holder</u>, No. CIV. 13-00354 SOM, 2013 WL 5607167, at *2 (D. Haw. Oct. 11,

2013) (describing no review over "discretionary judgment, such as the weighing of facts and the credibility of witnesses in a bond hearing") (citing <u>Singh</u>, 638 F.3d at 1202). After applying some factual deference, however, courts have generally reweighed the IJ's factual findings, to determine whether the facts as legitimately found add up to clear and convincing evidence of dangerousness or flight risk. <u>See</u>, <u>e.g.</u>, <u>Obregon</u>, 2017 WL 1407889, at *7 (concluding that "the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness," by comparing the written memorandum to the evidence presented, and noting that the IJ gave "little attention" to the immigrant's plan for rehabilitation and "other measures to justify that the least restrictive alternative was not further incarceration"); <u>Sales</u>, No. 16-cv-1745-EDL, ECF No. 17 at 14 (granting habeas because "based on th[e] record, the government's evidence did not establish clearly and convincingly that Petitioner was a poor bail risk," and reviewing the facts before the IJ, and how the IJ assessed those facts, including whether the IJ focused on or ignored certain <u>Guerra</u> factors, and the main reason the IJ denied bond); <u>Castaneda</u>, 2015 WL 3882755, at *8 ("Considering this evidence as a whole, the IJ was within his discretionary authority in concluding that the government had shown, by clear and convincing evidence, that Petitioner was a danger to the community."). In sum, a review of other district courts suggests that these courts informally apply a standard similar to the standard of review described above.

Absent clear guidance on the standard of review which governs this Court's review of the IJ's decision, and bolstered by similar standards of review applied by district courts in similar cases, this Court concludes that a standard of review similar to criminal bail determinations should apply. The Court accordingly reviews the IJ's factual findings for clear error, and independently reviews the facts, findings, and record to determine, <u>de novo</u>, whether those facts clearly and convincingly demonstrate that Liborio Ramos poses such a danger to the community that she must remain detained, including because no alternative to detention could protect the community. <u>Townsend</u>, 897 F.2d at 994.

## VI.    ANALYSIS OF THE MERITS

In its previous order, the Court concluded that the IJ legally erred because she did not fully

consider the evidence before her in determining whether the Government had met its burden to demonstrate by clear and convincing evidence that Liborio Ramos was either a danger to the community or a flight risk. ECF No. 19. The Court noted there that the IJ focused on Liborio Ramos's past crimes despite that she "demonstrated significant changed circumstances in the form of meaningful rehabilitation as evidenced by letters from community members, her own testimony about her dedication to sobriety, and her concrete steps like changing jobs and remaining in treatment," and by entering DUI therapy which "differed meaningfully" from her earlier therapy. Id. at 8-9. The Court also reasoned that the IJ "did not appear to consider alternatives to detention such as residential treatment or alcohol monitoring, or whether any amount of bond could mitigate . . . dangerousness." Id. at 8. The Court did not hold that the Government had not met its burden as a matter of law, but rather that the record did not show that the IJ had adequately considered the full record before her. See, e.g., id. at 9 ("The Court also notes that the rehabilitation Liborio Ramos attended since her 2016 DUI differed meaningfully from her rehabilitation after her 2015 DUI in that it offered personal therapy, and Liborio Ramos made other significant changes like increased involvement in church, reduced access to alcohol, and actual sobriety, Id. at 20-21, *which the IJ did not appear to consider*." (emphasis added) (citation omitted)). The Court enjoined the Government "from detaining Liborio Ramos unless they hold a bond hearing which comports with due process, where the Government shows by clear and convincing evidence that she is a flight risk or danger to the community." Id. at 10. Because the IJ has now held a second bond hearing, the issues in this case are (1) whether the IJ complied with this Court's directive to consider the entire record in making her determination, and (2) whether the IJ legally erred in concluding that the Government had shown that Liborio Ramos poses a danger to the community. Accordingly, the Court now reviews the IJ's findings of fact for clear error, and then independently reviews those facts in light of the entire record to determine whether those facts show clear and convincing evidence of dangerousness. Townsend, 897 F.2d at 994.

Before resolving those two questions, the Court must address a threshold argument made by Liborio Ramos. She argues that given the Court's prior order, "the Government would have had to present some additional evidence at Liborio Ramos's" second bond hearing, which it did

15

1    not do.  ECF No. 21 at 13.  "In other words, the IJ considered the same record that was before this

2    Court . . . when this Court found that the Government had not met its burden."  ECF No. 21 at 16.

3    She argues that because the Government did not present such evidence, it failed to meet its burden

4    as a matter of law.  Id.

5         If the argument is meant to invite the Court to adopt a rule that the Government must

6    always present additional evidence at a later bond hearing to sustain an earlier finding of

7    dangerousness or flight, the Court declines the invitation.  Certainly, the longer an immigrant is

8    detained, the more robust the procedural protections governing their detention should be.

9    Zadvydas, 533 U.S. at 701 (recognizing that "as the period of prior postremoval confinement

10   grows," detention grows less reasonable); see also Diouf, 634 F.3d at 1091.  Furthermore, because

11   the IJ must consider "the recency and severity of [any past] offenses," Singh, 638 F.3d at 1206,

12   evidence of criminal conduct grows less powerful as it becomes less current.  Thus, the passage of

13   time is undeniably relevant and the IJ must consider it.  But that does not mean that criminal

14   conviction evidence inevitably loses its persuasive force.  See Obregon, 2017 WL 1407889 at *8

15   (holding that the Government is not required as a matter of law to present new evidence of

16   dangerousness at a subsequent bond hearing).  Thus, the Court will address the question of the

17   adequacy of the evidence on the merits.

18        Turning now to that inquiry, and the initial question of whether the IJ gave full

19   consideration to the evidence before her, the Court can easily resolve that question in the

20   Government's favor.  The IJ's March 2, 2018 decision shows that she much more thoroughly

21   considered – or more thoroughly demonstrated that she had considered – whether the Government

22   had shown by clear and convincing evidence that Liborio Ramos was a danger to the community.

23   She also carefully engaged with Liborio Ramos's evidence of changed circumstances.  For

24   example, she noted Liborio Ramos's plan to contact her DUI counselor if she were tempted to

25   drink in the future, but noted that the counselor was unavailable when phoned by the Court.  ECF

26   No. 20-2 at 7.  She noted the significant differences between Liborio Ramos's video classes after

27   her first DUI and the group and one-one-one counseling sessions following her second DUI, but

28   reasoned that the short amount of time Liborio Ramos spent in this second program (because she

was picked up by ICE) was "meager in comparison to" her conduct. Id. at 7. And the IJ explained that she focused so heavily on the police reports of Liborio Ramos's arrest because Liborio Ramos "largely failed to provide her own testimony about the circumstances of her offenses." Id. Moreover, the IJ concluded that Liborio Ramos's "testimony that she has changed and will never drink again is not worthy of belief," including because she failed to corroborate testimony such as the reason she left her restaurant job. ECF No. 20-2 at 8. The IJ noted that she "thoroughly considered" Liborio Ramos's evidence and testimony but concluded that the Government met its burden of showing she was a danger to the community by clear and convincing evidence including because her two DUI's "were both relatively recent and undoubtedly serious." Id.[2] Thus, the IJ complied with this Court's directive that she consider the entirety of the evidence before her.

The next question is whether the IJ clearly erred in finding the facts. With two exceptions, the answer is that she did not. The majority of the facts she found are supported in the record. The first exception is her finding – which she repeated from her first order – that Liborio Ramos "was sentenced to 15 days in jail but testified that she served no jail time." ECF No. 20-2 at 5. In fact, the record shows that Liborio Ramos was correct. In its February 15 order, this Court admonished that the Government's "own exhibits show that [Liborio Ramos] was sentenced to community service." ECF No. 19 at 2 n. 1 (citing ECF No. 15-1 at 13). When an IJ's bond memorandum indicated "that he misunderstood some of the evidence presented," the court in Obregon explained, this "mistake may have caused the IJ to overestimate the severity" of the petitioner's past conduct, which "demonstrates that the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness." Obregon, 2017 WL 1407889, at *7. Once again, the same is true here. A 15-day custodial sentence, which the petitioner appears to deny having served, appears much more severe than the actual 15 days of community service which Liborio Ramos did serve.[3] Moreover, this mistake not only caused the

United States District Court
Northern District of California

---

[2] As already noted, the IJ abandoned her conclusion that Liborio Ramos was a flight risk, which this Court criticized in its prior order. ECF No. 19 at 9; ECF No. 20-2 at 9. The IJ found that it was unnecessary to reach the issue.

[3] Liborio Ramos also argues that the IJ failed to "fully explain her reasons for disbelieving"

1    IJ to adopt an inflated view of the seriousness of Liborio Ramos's criminal conduct, it also likely

2    contributed to her finding that Liborio Ramos was not credible.

3          The second clear error was the IJ's implicit determination that Liborio Ramos was not

4    actively engaged in her rehabilitation because she failed to complete the alcohol education course

5    required as a result of her second DUI.  Liborio Ramos did not voluntarily stop attending that

6    class.  In fact, the only reason Liborio Ramos stopped is that she was picked up by ICE.[4]  To now

7    allow DHS to detain Liborio Ramos because its own agents prevented her from finishing her DUI

8    classes has no justification in the record or common sense.

9          But for these factual findings, however, the Court adopts the facts as found by the IJ.

10   Having adopted those facts, the Court must then "make an independent examination of the record

11   to determine whether the pretrial detention order is consistent with the defendant's constitutional

12   and statutory rights and arrive at [its own] conclusion *de novo*."  Townsend, 897 F.2d at 994.

13   Having performed that duty, the Court finds that these facts in the aggregate do not meet the

14   Government's burden of demonstrating by clear and convincing evidence that Liborio Ramos

15   poses a danger to the community.

16         The IJ's decision not to release Liborio Ramos rests firmly on Liborio Ramos's two DUI

17   convictions and the circumstances of those offenses.  ECF No. 25-1 at 86 ("The particular

18   circumstances of Respondent's DUIs are also of importance here.").  As already noted, while an

19   immigrant's criminal history is relevant, "criminal history alone will not always be sufficient to

20   justify denial of bond on the basis of dangerousness.  Rather, the recency and severity of the

21

22   Liborio Ramos's changed circumstances.  ECF No. 21 at 14.  Petitioner's argument to this point is
     a nonstarter.  Liborio Ramos cites asylum cases in which the Ninth Circuit examined whether an IJ
23   provided an immigrant notice and an opportunity to provide corroborating evidence where the IJ
     made an adverse credibility determination.  ECF No. 21 at 15 (citing Bhattari v. Lynch, 835 F.3d
24   1037, 1042 (9th Cir. 2016)).  However, in the bond determination context, this Court cannot
     reweigh the IJ's determination of Petitioner's credibility.  Singh, 2010 WL 702246, at *4 ("[T]he
25   IJ's credibility findings based on cross-examination relating to witness testimony are squarely
     within the province of the IJ's exercise of discretion."); see also Manzanarez, 2013 WL 5607167,
26   at *2 (describing no review over "discretionary judgment, such as the weighing of facts and the
     credibility of witnesses in a bond hearing") (citing Singh, 638 F.3d at 1202).

27   [4] When she was able to do so, Liborio Ramos even continued her alcohol counseling and
     rehabilitation while she was in detention, at least until ICE transferred her away from the facility
28   which offered those courses.  ECF No. 8-1 at 61.

offenses must be considered." <u>Singh</u>, 638 F.3d at 1206. Here, the offenses at issue consist of two misdemeanors for which Liborio Ramos was never given a custodial sentence.

In determining whether that history is sufficient to uphold a finding of dangerousness by clear and convincing evidence, it is instructive to examine other immigration detention cases from courts in this circuit. In <u>Mau</u>, 562 F. Supp. 2d at 1116, the IJ found that a petitioner who had been detained for three years posed a danger to the community based on three DUI convictions that were four to six years old – two misdemeanor convictions and one felony conviction. <u>Id.</u> at 1118. That court found that petitioner's "past DUI convictions, while serious, cannot independently justify his continued indefinite detention, especially in light of the fact that the detention period (which has surpassed three years) has nearly doubled the 16 month penalty Petitioner received for that crime." <u>Id.</u> The district court concluded that "[u]nder the circumstances, the IJ's reliance on [these] convictions . . . as the basis for the finding of present dangerousness was an error of law." <u>Id.</u> In <u>Judulang</u>, 562 F. Supp. 2d at 1127, the IJ found that a man who had been in immigration custody for five years was a present danger based on a twenty-year-old conviction for voluntary manslaughter, a seven-year-old conviction for DUI, and a five-year-old conviction for theft. <u>Id.</u> The court reasoned that "[w]here Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate." <u>Id.</u> These cases are similar to Liborio Ramos's. While the convictions in <u>Mau</u> were slightly more remote in time, they also were more severe – there were three convictions, not two, and one was a felony. Similarly, while the convictions in <u>Judulang</u> were more remote, they were much more serious.

In <u>Hernandez v. Lynch</u>, "the IJ looked at several factors including Petitioner's criminal record" and "focused on Petitioner's three DUI convictions from 2001, 2004, and 2012." <u>Hernandez v. Lynch</u>, No. 15-CV-1717-WQH-BGS, 2016 WL 3406157, at *3 (S.D. Cal. June 20, 2016). Petitioner had been taken into custody in 2013, and his hearing before the IJ took place in 2015. The district court upheld the IJ's findings of dangerousness and flight risk. In that case, however, there was an additional, nearly continuous criminal history. "The IJ also noted that Petitioner had several other convictions, including receiving stolen property in 1991, taking a

vehicle without the owner's consent, prostitution in 2004, theft, and a failure to appear on the theft charge in 2005." Id. at *3. The criminal history in Hernandez was substantially more serious than Liborio Ramos's.[5]

Consideration of this authority and the record as a whole compels the conclusion that the Government has not met its burden of demonstrating dangerousness by clear and convincing evidence. "Case law demonstrates that establishing dangerousness by 'clear and convincing evidence' is a high burden and must be demonstrated in fact, not 'in theory.'" Obregon, 2017 WL 1407889 at *7 (citing United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991)). Both of the crimes at issue were misdemeanors. The sentencing judges who were aware of the facts declined to impose *any* custodial time. At the time she was picked up by ICE, Liborio Ramos was complying with her conditions of probation, including attending the alcohol education designed to assist her in overcoming her addition. She put in place additional resources to support her recovery. When Liborio Ramos was picked up by ICE as she and her family were attempting to leave an IHOP after breakfast, Liborio Ramos was not in the driver's seat – her daughter was. ECF 8-1 at 61. It has now been approximately 16 months since Liborio Ramos's most recent offense. Also, as in Mau, this court considers the maximum penalty that could have been imposed for Liborio Ramos's crimes, because that fact complements the analysis of the "recency and severity of the offenses" required by Singh, 638 F.3d at 1206. In a few days, Liborio Ramos will have been in custody for more than a year – i.e., more than the longest sentence she could have served for her second DUI. In short, two non-violent misdemeanors in which no one was injured, in light of the other facts in this record, simply do not justify indefinite detention. Without question, her driving was erratic, and her blood alcohol was high. The crimes were relatively close in time. But "when it comes to non-violent crimes, especially those caused by addiction, the

---

[5] There are cases with facts more similar to Liborio Ramos's that uphold detention. See Gomez-Ochoa v. Lynch, No. CV1601646PHXJJTBSB, 2017 WL 913597, at *9 (D. Ariz. Feb. 8, 2017), report and recommendation adopted, No. CV1601646PHXJJTBSB, 2017 WL 897777 (D. Ariz. Mar. 7, 2017); Castaneda, 2015 WL 3882755. These cases are not reconcilable with the cases mentioned in the body of the order. The Court has carefully considered these cases and does not find their analysis persuasive.

passage of time does make a difference, as does the availability of treatment options." Obregon, 2017 WL 1407889 at *8.[6] The IJ overemphasized the seriousness of Liborio Ramos's crimes and, as previously explained, gave unduly short shrift to her rehabilitation efforts.

The Court also finds that the IJ once again failed to adequately consider whether alternatives to detention could protect the community from any continued dangerousness Liborio Ramos might pose. The IJ stated that she "considered whether there is any condition of release that would ensure the public safety," but concluded that no such condition existed because a "condition of release is only as reliable as the person upon whom the condition is imposed [and Liborio Ramos] apparently has little regard for the law." ECF No. 20-2 at 9. While the IJ noted that Liborio Ramos was on probation at the time of her second DUI and lacked a driver's license at the time of both incidents, id., her impression was likely also colored by her erroneous statement that Liborio Ramos served a custodial sentence and then lied about it to the IJ, see supra. Moreover, there was nothing about Liborio Ramos' conduct since her second DUI that showed an inability to follow the law. If anything, the evidence was to the contrary: Liborio Ramos was complying with the conditions of her probation and, as previously noted, when Liborio Ramos was picked up by ICE, her daughter was in the driver's seat, not Liborio Ramos. In light of this evidence, there are many alternatives to detention that might have been sufficient to protect the community from whatever danger Liborio Ramos posed – mandatory alcohol education and counseling programs (such as the one Liborio Ramos was enrolled in when she was picked up), an ignition interlock device[7], ankle monitors, and mandatory check ins, to name some of them. See

---

[6] Liborio Ramos also contends that the IJ's bond memorandum shows that she improperly placed the burden of introducing new evidence on Liborio Ramos. Id. While the IJ did state more than once that she had "invited" Liborio Ramos to present additional witnesses or evidence and that Liborio Ramos had "declined" to do so, ECF No. 20-2 at 4, 7, but made no similar comments about the Government, it is clear that the IJ placed the burden where it belonged. Singh, 638 F.3d at 1200 (requiring the Government, not the immigrant to show dangerousness by clear and convincing evidence). She concluded that the Government "met its burden of demonstrating by clear and convincing evidence that [Liborio Ramos] poses a danger to the community." Id. at 8.

[7] See Cal. Veh. Code § 23575. In neither of Liborio Ramos's DUIs did the court require her to install an ignition interlock. ECF No. 15-1 at 13, 37.

Obregon, 2017 WL 1407889, at *7 (critiquing the "little attention" given to whether "the least restrictive alternative was not further incarceration"); Sales, 2017 WL 6855827, at *7 (ordering immigrant released on conditions "such as an ankle monitor and reporting requirements").

### CONCLUSION

For the aforementioned reasons, Liborio Ramos's motion to enforce is GRANTED. The Court orders Respondents to release Liborio Ramos immediately under appropriate conditions of supervision, such as an ankle monitor and reporting requirements. Because the Court grants alternative relief under Liborio Ramos's motion to enforce, Liborio Ramos's motion for a temporary restraining order is terminated as moot. Chen v. Aitken, 917 F. Supp. 2d 1013, 1019 (N.D. Cal. 2013) (terminating as moot motion for preliminary relief when court granted petition).

**IT IS SO ORDERED.**

Dated: March 13, 2018

_____
JON S. TIGAR
United States District Judge